Hibbard, P. J.
This is an action of contract in which the plaintiff seeks to recover the difference between the compensation to which he claims he is entitled and that paid to him by the defendant from June 1, 1936, to the date of the writ. The Trial Judge found this difference to be $84.28.
The defendant’s answer, in addition to a general denial, contained a plea of payment and allegations that the Board of Fire Commissioners (hereinafter referred to as the Board) of the City of Springfield (hereinafter referred to as defendant) legally reduced the rate of compensation of the plaintiff effective June 1, 1936; that there could be no recovery because the appropriations made by the defendant were insufficient to authorize the alleged contract and that the defendant had taken lawful action under civil service laws to reduce the compensation of the plaintiff.
The facts are not greatly in dispute.
The plaintiff was, during the year 1936, a civil service employee of the defendant, holding the position of Deputy Chief in the fire department. The defendant is a municipal corporation, whose charter is found in Acts of 1852, Ch. 94.
On March 2, 1936, the Mayor of the defendant, acting in conformity with the budget provisions of the Municipal Finance Act, (G. L. Ch. 44, §32) submitted to the City Council, composed of a Board of Aldermen and a Common Council, a budget for the year 1936. In the budget thus submitted, the Mayor recommended the appropriation of sufficient sums to continue to pay the same compensation which all of the employees of the defendant were then receiving.
The budget was referred to the Committee of the Whole of the Board of Aldermen. No action was taken until May *533 1, 1936, the last day of the sixty-day period on which the City Council had power to act under the provisions of said section 32. On that date, the City Council, by action of both the Boards, amended the Mayor’s budget by reducing all the items thereof, except bond principal, and like fixed items, by five per cent, for the entire year. This reduction affected all personal service items. The amounts actually appropriated by the amended budget were only sufficient to pay the items when so reduced.
The vote through which the amended budget was made effective contained the following:
“I move that in the interest of municipal economy, the items of the budget submitted by the Mayor to the City Council on March 2,1936, be reduced in accordance with the schedule hereto annexed marked A, which schedule is made a part of this motion, by the amounts as stated in said schedule, so that the said budget as so reduced, shall read in accordance with the schedule hereto annexed, marked B, which schedule is hereby made a part of this motion.
“I further move that the heads of each department be and hereby are directed to absorb the amounts so reduced as to each and every personal service item reduced.
“It is further ordered that the rates of pay of all' city employees and classes of employees be and hereby are established at the rates stated in the schedules supporting the amounts appropriated by this order for personal services, such rates to take effect April 1,1936, unless otherwise provided for, and that no increase thereto be made except by an order of the City Council, approved by the Mayor.
_ “It is further ordered that no department incur liabilities against an appropriation account in excess of the unencumbered balance thereof. ’ ’
The budget, as first submitted by the Mayor, contained the provision that the number of city employees was to be as set out in column 17 of a schedule supporting the amounts *534 recommended for the appropriations, and that number was not to be increased except by special order of the City Council. This budget likewise contained the same provision found in the amended budget order, to the effect that “the rates of pay of all city employees and classes of employees be and hereby are established at the rate stated in the schedules supporting the amounts appropriated by this order for personal services; such rates to take effect April 1, 1936, unless otherwise provided for, and that no increase thereto be made except by an order of the City Council.”
These two provisions were, as already indicated, carried over into the amended budget order, with the result that while the number of employees and the rates of pay remained the same as originally provided, the appropriations were insufficient by the sum of five per cent.
It appears from the report that after the amended budget was passed, the Board of Fire Commissioners of the defendant, created under authority of the Acts of 1893, Ch. 97, and the Revised Ordinances of the City, Ch. 29, was notified of the vote of the City Council, met and decided that the only solution of the problem presented was to impose a uniform reduction in compensation on all of the members of the department. The plaintiff and other employees of the defendant had been receiving compensation at the old rate. The decision to reduce the compensation for the entire year to the amount of five per cent, required a greater per cent, for the balance of the year. Accordingly, the Board ordered a reduction of the compensation of each eim ployee of the department of ten per cent, for the period of six months, from June 1,1936 to November 30,1936. Thereafter notice was given, purporting to be as required under the terms of the Civil Service Law of the state (G. L. Ch. 31, §43) of the reduction in compensation. The reason set forth in the notice was “reduced appropriations in the personal *535 service items of the fire department of the City of Springfield, as ordered in the budget as passed by the City Council of Springfield, May 1,1936”.
Thereafter the plaintiff, as well as all other members of the department asked for a hearing, which was accorded them, and later notices were sent to them within the statutory time by the Board that it had reaffirmed its earlier action.
It is conceded that all the civil service formalities were legally complied with by the defendant as well as the plaintiff. The Trial Judge, by his findings, has established as a fact that the reductions were uniform, free from bad faith, and valid.
The defendant contends that the appropriation part of the order controls and that the provisions of the order setting up the number of employees and rates of pay in ways that might exceed the appropriations were invalid, and states the issues of law involved as follows:
1. The power of the Board of Fire Commissioners to reduce the compensation of the plaintiff:
a. Under the applicable statutes and ordinances.
b. By delegation of authority from the City Council, and
c. By force of the Municipal Finance Act.
2. Whether or not the compensation of the plaintiff was legally reduced under the civil service laws.
3. The right of the plaintiff to recover compensation greater than the amount of the appropriation made by a municipality to pay him.
4. Whether or not the action of the City Council in attempting to fix rates of pay in the budget was invalid when it (1) failed to appropriate sufficient sums in the same budget order to pay such rates and (2) directed heads of departments to absorb reductions in appropriations made and (3) directed heads of departments not to exceed the appropriations so made.
*536 The plaintiff recognizes that the City Council had the power to decrease the various rates of pay but contends that, under the charter of the defendant, the City Council alone had the power to fix the compensation of its employees ,• that this power could not be delegated, and in fact, never was delegated.
The plaintiff recognizes the obligation of the defendant not to incur expenses in excess of its appropriations, but contends that it was under obligation to appropriate sums sufficient to pay the salaries and wages of its employees, as fixed by the City Council; and that the purported reduction in wages by the Board of Fire Commissioners, acting under the vote of the City Council, was invalid, without authority and ineffective.
At the close of the evidence, the plaintiff filed thirty-four requests for rulings.
Those numbered 1, 2, 8,10,15,16,18 and 34 were granted and need not now be considered. The others denied or granted with reservations were:
“3. Statute 1893, ch. 97, did not give the City Council the power to delegate the right to fix the compensation of members of the Fire Department.
4. Said statute merely gave to the City Council the power to delegate the administrative powers of the City Council and not the legislative powers.
5. The power of fixing the compensation of the members of the Fire Department is a legislative one.
6. The power of fixing the compensation of the members of the Fire Department is distinct from any of the powers enumerated specifically or contained by reasonable implication in Statute 1893, Ch. 97.
7. The City Council never by ordinance delegated nor attempted to delegate to the Board of Fire Commissioners the power to fix the compensation of the members of the Fire Department.
9. The power given to the Board of Fire Commissioners by ordinance to appoint, manage and control *537 all officers and members of the Fire Department and power to make lawful rules and regulations for their government and discipline does not carry with it the power to fix the compensation of members of the Fire Department.
11. Inasmuch as the plaintiff is an officer under the provisions of the Charter, Statutes 1852, Ch. 94, §8, par. 2, the City Council is the body entrusted with the power to fix the plaintiff’s compensation.
12. Inasmuch as the plaintiff is an officer, under the provisions of Revised Ordinances of 1922, of the City of Springfield, chapter 5, the City Council is the body entrusted with the power of fixing the plaintiff’s compensation.
13. When the Board of Fire Commissioners ordered that the compensation of the members of the Fire Department be reduced by ten percentum (10%) from June 1 to December 1, 1936, said Board did not have the power to fix the compensation of the members of the department.
14. The action of the Board of Fire Commissioners in reducing the plaintiff’s compensation was unauthorized by any existing statute, was in excess of its powers, and was void.
17. Where the charter and amendments commits to the legislative body — that is, the City Council — the exclusive power to fix the compensation of the members of the Fire Department, said power cannot be delegated in whole or part nor exercised by the City Council vicariously.
19. The phrase in the budget order directing the heads of the departments to absorb the reduction in each and every personal service item was null and void and of no effect.
20. The phrase in the budget order directing the heads of the departments to absorb the reduction in each and every personal service item is invalid as an attempt to vest an untrammelled discretion in the heads of the departments without some rules and regulations for guidance.
21. The phrase in the budget order directing the heads of the departments to absorb the reduction in eaph and every personal service item is invalid because it is broad, loose, vague and indefinite.
*538 22. "When the City Council determined the rates of compensation by the day in Column 18 of the Departmental Estimate Sheets, it legally established the rates of pay of the members of the Fire Department.
23. In order to effect a general and uniform reduction in the compensation of the members of the Fire Department the City Council had an obligation to establish the amount of said compensation at the time that the budget order was passed.
24. The daily rates of pay of the members of the Fire Department were legally established in the Departmental Estimate Sheets when the budget was passed.
25. The compensation of the members of the Fire Department having been fixed when the budget was passed, the City Council had an obligation to appropriate sums of money sufficient to pay said compensation.
26. Inasmuch as the plaintiff as a fireman of the City of Springfield is a public officer, he was an official within the provisions of G. L. (Ter. Ed.) Ch. 44, §33-A.
27. In view of the fact that the members of the Fire Department are officials within G. L. (Ter. Ed.) Ch. 44, §33-A, the City Council had an obligation to appropriate sums of money sufficient to pay said compensation.
28. The fact that the City Council did not appropriate sufficient money to pay the compensations legally established by the city does not release the city from liability.
29. The compensation of the members of the Fire Department has been so fixed by law that it was not legally reduced by act of the respondents.
30. The City Council had an obligation to appropriate sums of money sufficient to pay the compensation of the members of the Fire Department as established by the budget order in the Departmental Estimate Sheets.
31. _ Inasmuch as the City Council determined the salaries and wages of the members of the Fire Department in the Departmental Estimate Sheets of the budget order, said salaries and wages shall remain as there established until changed by concurrent vote of the City Council,
*539 32. The appointment of the plaintiff by the City of Springfield through the Board of Fire Commissioners, as a fireman or public officer of said city, whose salary was fixed by the municipal action of the City Council in the passing of the annual budget, created a contract between the city and the plaintiff for the payment of said salary.
33. The obligation to pay the salary of the plaintiff is a liability incurred by the City of Springfield.”
Of the foregoing, the 4th was granted with respect to the City Council not having the power to delegate its legislative powers; the fifth was granted with the addition that said power might be executive or administrative; the 11th, 12th, 22nd, 24th and 25th to 32nd inclusive were denied, contrary facts having been found; the 33rd was granted but the Judge ruled that such obligation is confined to the amount of salary fixed by the Board of Fire Commissioners and in compliance with the Civil Service Laws.
The defendant seasonably filed certain requests upon which the Trial Judge took no action because of his finding for the defendant.
The Trial Judge found for the defendant. The plaintiff claimed a report by reason of the refusal of the Court to rule as requested. The report states that it contains all the evidence material to the questions reported.
The Trial Judge filed a very complete decision, making specific findings with relation to the City Charter, Legislative Acts, Ordinances, Mayor’s Budget and Order, Amended Budget and Order, Departmental Estimate Sheets, Schedules and Civil Service Proceedings, and certain other findings as follows:
(1) The duties of the District Chief were not such as made him an official within the provision of Gr. L. Ch. 44, §33A.
(2) There is no ordinance of the City of Springfield fixing the salaries of any officers or employees of the Fire Department.
*540 (3) The schedule first hereinbefore referred to had in addition to the items as above stated another schedule called ‘ ‘Departmental Estimate Sheets ’which contained column 18 hereinbefore referred to.
(4) The plaintiff is not an officer of the City of Springfield.
(5) The City Council did not increase the pay of the plaintiff.
(6) The City Council on May 1, 1936, appropriated the sum of $408,750. as a reserve for contingencies— Regular, but no transfer of any part of said sum of money was ever voted to the Fire Department.
The case was ably and extensively briefed and argued before this tribunal.
To make this case understandable and thus reach a correct decision, we must strip it of the complexities due, as we hold, to erroneous theories as to the issues held by both parties and which governed the trial.
When thus stripped the issue becomes reasonably simple.
It is conceded that the City Council had under the charter the power to establish a fire department, appoint officers and members, remove them and fix their compensation.
Under the Acts of 1893, Ch. 97, the powers and duties so conferred in relation to the establishment and maintenance of a fire department could be exercised in any manner the City Council might determine wise and expedient and through any agency or board.
Such delegation of authority required an ordinance. One was passed which is now Ch. 29 of the Revised Ordinances of 1922. 'Thereunder in section 4 the appointment, management and control of all men and the right to make rules and regulations were delegated to the board. This body was required to furnish a financial estimate each year and forbidden to expend or incur liabilities beyond the appropria *541 tion. There was no specific repeal of the power by charter granted to the City Council to fix the compensation of the members of the department. In this respect, the instant action differs from Whalen vs. Malden, 1936 A. S. page 173. That case is not here an authority for the facts were entirely different as heretofore stated.
In this connection it should be borne in mind that formerly there was an ordinance fixing the compensation of the employees (Ordinance of 1918, Ch. 8, §1; Ordinance of 1919 ch. 3) but since the revision in 1922 no compensation of a city officer or employee has been fixed by ordinance except in the case of the mayor, the assessors, assistant assessors, and others which are required to be fixed by ordinance under some specific statute. Further in this connection the provisions of §4, Ch. 175 of the Acts of 1853 must be borne in mind. It is there provided that the compensation to the fire department, to the assessors, collector of taxes, city clerk, city treasurer and school committee shall be fixed by a concurrent vote of the two branches of the City Council, any provision contained in the 8th section of the city charter to the contrary notwithstanding.
It appears from the report that each year for a period of at least fifteen years rates of pay and compensation have been fixed by the mayor in his budget and then established by joint action of the City Council. While this action is not conclusive, it at least shows the interpretation placed upon the charter provisions, legislative acts and the terms of the ordinances by those most closely concerned.
Considering now the sequence of events in 1936 and with some repetition for the sake of clarity, we find the heads of departments submitted in course the departmental estimate sheets to the mayor. He prepared a budget and attached thereto schedules conforming to the estimates and with recommendations as to appropriations. Had this budget *542 been adopted, there would have been no change whatever from that of the previous year. The Trial Judg'e found “that the matter of reduction of the pay of the plaintiff and other employees was considered by the City Council.” It is apparent that for a period of nearly two months there was study and discussion of the proposed budget, seemingly motivated by a recognized necessity for economy. On the last day when the City Council could act, it adopted a budget similar to that proposed by the mayor, with like schedules, but the total appropriations therein, except as to certain fixed charges, were reduced five per cent. The adoption of the amended budget was by vote which contained the clauses hereinbefore recited. As to the clause directing the absorption of the reduction in the appropriation for personal service items, the Trial Judge found that it was thereby intended by the City Council that the heads of the several departments should use their own discretion in order to keep within the amount of money appropriated.
We may disregard the events following the adoption of the amended budget as in our view they are not material to a decision.
The administration of the fiscal affairs of the city was vested in the mayor and City Council. Certain powers and duties in relation to the establishment and maintenance of a fire department were given to the City Council by Ch. 175 of the Acts of 1853. In this chapter it is provided that the compensation of the fire department shall be fixed “by concurrent vote of the two boards making up the City Council”. This latter provision has never been specifically repealed. Acting under the authority in chapter 97 of the Acts of 1893, which permitted the City Council to carry into effect all the powers and duties then in the City Council as to the establishment and maintenance .of a fire department, wholly or in part through the agency of any per *543 son acting as a board, the City Council passed an ordinance which is now Oh. 29 of the Revised Ordinances of 1922. This ordinance, after creating a board of fire commissioners, gave to them the appointment, management and control of all officers and members of the fire department, with power to make rules. The only mention of finances in this ordinance is found in section 5 which requires the board to furnish an estimate of its financial requirements for each current financial year. Elsewhere in this ordinance (ch. 5) appears a section reading as follows:
“Except as otherwise provided by law, the salaries of all officers of the city shall be fixed from time to time by the City Council by concurrent vote, and the wages of all other employees shall be fixed in such manner as the City Council shall determine. ’ ’
We can draw but one conclusion from this background of legislative acts and ordinances, acts and votes, namely that the City Council as theretofore, on May 1, 1936, fixed and established the wages and compensation of the plaintiff and all other employees of the defendant for the year 1936 in amounts five per cent, less than the previous year. The action establishing or fixing the compensation of the employees and making the appropriations was one vote and the two parts must be read together. It is true there is in the vote approving the budget a clause reading:
“It is further ordered that the rates of pay of all city employees and classes of employees be and are hereby established at the rates stated in the schedule supporting the amounts appropriated by this order for personal services.”
This clause must however be interpreted in the light of the earlier clause in the same vote .directing “the heads of each department to absorb the amount so reduced as to each and every personal service item reduced.”
*544 Whatever may have been the motives, however questionable the method of procedure, or inapt the phraseology it is impossible to interpret the background and sequence of events in any understandable manner except by ruling that the compensation of the plaintiff was fixed and established by the City Council and the direction to “absorb” the reduction was intended to lay upon the shoulders of those in charge of each department the burden, and it may be the stigma, of apportioning the reduced appropriation among the individuals making up the department. It was a direction to do the clerical work and division and thus absorb the reduction.
Stated otherwise, the City Council did not undertake to itemize the compensation to be paid to the several individuals by reason of the reduced appropriation but said in effect to the Board of Fire Commissioners we have decided to make a reduction of five per cent in the amount appropriated for personal services in your department. The effect of this will be to reduce the compensation which we have allowed to each member of the force by five per cent for the entire year. You are authorized and must so schedule the compensation that this reduction will be effective within the time named in the amended order. To repeat— the practical effect of all this was to re-establish the compensation, to fix it for the year 1936 and to require the board to determine within the period named when, in what manner and in what proportion the compensation should be paid.
In some respects, the action of the City Council was not unlike that disclosed in Openshaw vs. Fall River, 287 Mass. 426, 431. It is there said:
“The City Council did not pass a formal separate vote to reduce the pay of police officers as distinguished from other officers or employees of the city. It did *545 however by vote adopt a budget based on a reduction of twenty per cent, of the salaries of all officers and employees of the city. It annexed to and incorporated in this vote a schedule showing the reduced appropriation of each department, including the police, and also the explanatory letter from the Board of Finance, from which it is manifest that the adoption of the budget was in effect a reduction of the pay of police officers so far as the City Council was concerned. There was adequate expression of the intention of the City Council that the salaries of the police should be reduced by twenty per cent.
“There is a presumption that the acts of public bodies are regular and lawful.”
We must if possible give effect to the acts and votes of a City Council and especially where it is conceded that such acts were in good faith, without malice and not discriminatory.
In our view there was no necessity for any action by the Board of Fire Commissioners and whatever was done by that board subsequent to the receipt of the notice of the reduced appropriation was immaterial so far as the instant action is concerned.
We do not need to consider whether the instant action falls within the decisions in Riopel v. City of Worcester, 213 Mass. 15 wherein it was held there is no relation between a city and its officers which requires the city to provide compensation for their services unless provision is made by statute, ordinance or contract and when such provision is made the right of recovery and the amount to be recovered is determined, limited and regulated by its express terms.
Nor is Barnard vs. City of Lynn, 1936 A .S. 1515 authority for in that case the compensation of the employees was already established by an ordinance before the budget was adopted and the appropriation for the compensation made.
*546 The reduction in compensation made applicable to all employees of the city was not subject to the provisions of the Civil Service Law. Alger vs. Justice of the District Court, 283 Mass. 596; Opernshaw vs. Fall River, supra.
There was no obligation upon the part of the City Council to grant the employees affected a hearing.
The Trial Judge made erroneous findings and there were errors in some of his rulings. These errors however were not prejudicial as his finding was for the defendant. He reached a correct conclusion even if by erroneous reasoning.
The report must be dismissed.